**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| PROVISION-MED LIMITED LIABILITY COMPANY, et al., | : | Case No. 1:24-cv-74 |
| | : | |
| | : | Judge Matthew W. McFarland |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| JIM SURBER, et al., | : | |
| | : | |
| Defendants. | : | |

---

### ORDER AND OPINION

---

This matter is before the Court on Defendants Jim Surber and Birdie Rae, LLC's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim (Doc. 4), Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 13), and Plaintiffs' Motion to Strike (Doc. 15). Each motion has been fully briefed and is thus ripe for the Court's review. For the reasons below, Defendants' Motion to Dismiss (Doc. 4) is **DENIED**, Plaintiffs' Motion for Leave to File an Amended Complaint (Doc. 13) is **DENIED WITHOUT PREJUDICE**, and Plaintiffs' Motion to Strike (Doc. 15) is **DENIED.**

### BACKGROUND

In April 2020, Plaintiff Karen Tipton, the sole owner of Plaintiff Better Built Construction Services, Incorporated, was introduced to Defendant Jim Surber over a conference call. (Tipton Aff., Doc. 12-1, Pg. ID 129.) Surber resides in North Carolina and is the sole owner of Defendant Birdie Rae, LLC—a personal protective equipment

business. (Surber Decl., Doc. 14-1, Pg. ID 179.) Tipton and Surber, along with others, discussed a venture to supply personal protective equipment primarily through Tipton's preexisting business operations in Middletown, Ohio. (Tipton Aff., Doc. 12-1, Pg. ID 129.) Tipton joined the phone call from Ohio while Surber joined from North Carolina. (*Id.*; Surber Decl., Doc. 14-1, Pg. ID 179.)

Surber helped draft a Letter of Understanding for the venture to supply and sell medical supplies from Better Built's location in Ohio. (Tipton Aff., Doc. 12-1, Pg. ID 129.) This Letter of Understanding provided that Better Built would have a 40% membership interest in the venture while Birdie Rae would be allocated a 20% interest. (Letter of Understanding, Doc. 5, Pg. ID 73.) It also listed that warehousing and staffing for the venture would be provided by Better Built. (*Id.* at Pg. ID 74.) Surber knew that Better Built was an Ohio company operating in Middletown, Ohio. (Tipton Aff., Doc. 12-1, Pg. ID 129.) And, Surber signed his name to the Letter of Understanding as "James D. Surber, Owner [of] Birdie Rae, LLC." (Letter of Understanding, Doc. 5, Pg. ID 74.)

Surber later provided input as to the name and website for the new Ohio venture during another conference call. (Tipton Aff., Doc. 12-1, Pg. ID 129.) On April 16, 2020, the parties decided to name the venture Provision-Med, LLC. (4/16/2020 Email, Doc. 12-1, Pg. ID 132.) When asked what name he would like to list on Provision-Med's paperwork, Surber provided the name and address for Birdie Rae, LLC. (*Id.*) The next day, April 17, 2020, Provision-Med's Articles of Organization were filed with the Ohio Secretary of State. (Articles of Organization, Doc. 12-1, Pg. ID 137-140.) Tipton was named as the statutory agent with an address in Middletown, Ohio. (*Id.*)

The relevant parties, including Surber, agreed that Tipton would draft Provision-Med's Operating Agreement because she had prior experience drafting such documents for an Ohio company. (Tipton Aff., Doc. 12-1, Pg. ID 130.) This Operating Agreement was finalized and sent to all the parties for signatures. (*Id*.) After some delay, Surber was reminded to sign the Operating Agreement. (*Id*.) In response, Surber said his printer was not working but that he "would take care of it." (*Id*.) The Operating Agreement exhibit attached to the Complaint includes an unsigned signature block for "Birdie Rae, LLC by Jim Surber." (Operating Agreement, Doc. 5, Pg. ID 87.)

Provision-Med began to take form. Bank accounts for Provision-Med were opened in Ohio and linked to a Shopify app, as well as other online portals. (Tipton Aff., Doc. 12-1, Pg. ID 130.) Surber was involved in managing these accounts. (*Id*.) He also recruited a family member to help set up Provision-Med's website. (*Id*.) Better Built purchased products for Provision-Med to market and sell. (*Id*.) These products were received for inventory in Middletown, Ohio. (*Id*.) Provision-Med's sales were received through Shopify or phone and then filled and shipped from Middletown, Ohio. (*Id*.) Surber was in "frequent communication" with Plaintiff Tipton and others as to the arrangements for the venture. (*Id*.) On May 12, 2020, Surber was sent updates as to Provision-Med's financial operations and sales. (*Id*.)

At some point, the parties allegedly entered oral and written agreements for Surber, Birdie Rae, and Defendant Ron Peebles, Jr. to make capital contributions and financial commitments to Plaintiffs. (Compl., Doc. 5, ¶ 4.) Each Defendant allegedly breached these contracts by failing to pay $85,819.97. (*Id*. at ¶ 6.)

Plaintiffs now bring a breach of contract claim against Defendants. (*See* Compl.,

Doc. 5.) Surber and Birdie Rae ("Moving Defendants") move to dismiss this claim for lack

of personal jurisdiction and failure to state a claim. (*See* Motion to Dismiss, Doc. 4.)

Plaintiffs then moved to amend their complaint and to strike Moving Defendants' Reply

in support of their Motion to Dismiss. (*See* Motion to Amend, Doc. 13; Motion to Strike,

Doc. 15.)

## LAW AND ANALYSIS

As Plaintiffs' Motion to Strike relates to Moving Defendants' Motion to Dismiss

(*see* Doc. 15), the Court will consider it first. Then, the Court will turn to the Motion to

Dismiss (Doc. 4). Lastly, the Court will consider Plaintiff's Motion to Amend (Doc. 13).

## I.     Motion to Strike

Plaintiffs move for the Court to strike Moving Defendants' Reply to their Motion

to Dismiss and Defendant Surber's Declaration. (Motion to Strike, Doc. 15). Alternatively,

Plaintiffs move for leave to file a sur-reply. (*See id.*) Plaintiffs contend that such relief is

necessary because Moving Defendants included new factual allegations and arguments

in their Reply. (*Id.*) After examining the submissions, the Court finds neither form of relief

appropriate. Moving Defendants' Reply largely addresses issues raised by Plaintiffs. *See*

*Asbury v. Teodosio*, 412 F. App'x 786, 792 (6th Cir. 2011) (noting that reply brief simply

replied to the response and elaborated on original motion). And, to the extent that

Surber's declaration includes "controverting assertions," they were not considered by the

Court. *See Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991); *Mullenix v. Eastman*

*Chem. Co.*, 237 F. Supp. 3d 695, 703 (E.D. Tenn. 2017) (denying motion to strike an affidavit

4

because it was not a pleading but disregarding its contradictory assertions). The Motion to Strike is therefore denied.

## II. Motion to Dismiss for Lack of Personal Jurisdiction

The Court next considers Moving Defendants' argument that this Court lacks personal jurisdiction over Surber. (*See* Motion to Dismiss, Doc. 4, Pg. ID 62-64.) Federal Rule of Civil Procedure 12(b)(2) provides for dismissal if a court lacks personal jurisdiction over a defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quotation omitted). When, as here, the Court decides the motion on written submissions, it must consider the pleadings and affidavits "in a light most favorable to the plaintiff" and "does not weigh the controverting assertions of the party seeking dismissal." *Theunissen*, 935 F.2d at 1459. In this context, a plaintiff need only make a prima facie showing that personal jurisdiction exists—a "relatively slight" burden. *AlixPartners, LLP v. Brewington*, 836 F.3d 543, 549 (6th Cir. 2016) (citations omitted).

"Personal jurisdiction may be either 'general'—that is, it extends to all of the defendant's activities in the state because the defendant resides or has its principal place of business there or is otherwise 'at home' there—or 'specific,' which requires that the lawsuit arise out of the defendant's contacts with the state." *Gunn v. Wild*, No. 22-5015, 2022 WL 18401276, at *1 (6th Cir. Sept. 13, 2022) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358-360 (2021)). Here, Plaintiffs' arguments are limited to specific jurisdiction. (*See* Response, Doc. 12, Pg. ID 111.)

"When sitting in diversity, a federal court may exercise [specific] personal

5

jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Blessing v. Chandrasekhar*, 988 F.3d 889, 901 (6th Cir. 2021). "Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012).

### A. Distinguishing Surber from Birdie Rae

As an initial matter, Surber argues that all of his actions were done in his capacity as the owner of Birdie Rae and should therefore be disregarded in addressing personal jurisdiction over him individually. (Motion to Dismiss, Doc. 4, Pg. ID 62-64.) "While it is true that jurisdiction over the individual officers of a corporation cannot be predicated merely upon jurisdiction over the corporation, . . . the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants." *Balance Dynamics Corp. v. Schmitt Indus., Inc.*, 204 F.3d 683, 698 (6th Cir. 2000) (quotation omitted). Rather, when "an out-of-state agent is actively and personally involved in the conduct giving rise to the claim, the exercise of personal jurisdiction should depend on traditional notions of fair play and substantial justice; *i.e.*, whether [he] purposely availed [himself] of the forum and the reasonably foreseeable consequences of that availment." *Id.*

As sole owner and general manager of Birdie Rae, Surber was "actively and personally involved" in the alleged conduct of this case. (Surber Decl., Doc. 14-1, Pg. ID 179.) So, irrespective of the contention that Surber was acting in a corporate capacity,

6

Surber cannot avoid this Court's exercise of personal jurisdiction over him on this basis. *See WCR, Inc. v. W. Canada Heat Exchanger, Ltd.*, No. 3:18-CV-278, 2021 WL 2336575, at *5 (S.D. Ohio June 8, 2021). The Court therefore proceeds to Ohio's long-arm statute and due process considerations.

### B.    Ohio's Long-Arm Statute

Ohio's long-arm statute lists nine situations in which Ohio courts may exercise personal jurisdiction over an out-of-state defendant. *See* Ohio Rev. Code § 2307.382(A). Plaintiffs argue that two are relevant here: "transacting any business in this state" or "contracting to supply services or goods in this state." *Id*. § 2307.382(A)(1)-(2); (Response, Doc. 12, Pg. ID 112-114.) Because the Court finds that Surber transacted business in Ohio, it need not examine other potential bases for jurisdiction.

The clause "transacting any business" is understood broadly under Ohio's long-arm statute. *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 431 (6th Cir. 2006). As explained by the Ohio Supreme Court, "transact" means "to prosecute negotiations; to carry on business; to have dealings." *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 559 N.E.2d 477, 480 (Ohio 1990) (quotation omitted). It is a "broader term than the word 'contract' and may involve business negotiations which have been either wholly or partly brought to a conclusion." *Id*. (quotation omitted). That said, "a nonresident's ties must create a substantial connection with the forum state." *U.S. Sprint Commc'ns Co. Ltd. P'ship v. Mr. K's Foods, Inc.*, 624 N.E.2d 1048, 1052 (Ohio 1994) (quotation omitted).

When the claim involves a contract, courts often consider two factors in the "transacting business" inquiry: "(1) if the defendant reached out to the plaintiff in the

forum state to create a business relationship; and (2) whether the parties conducted their contract negotiations in the forum state or agreed on terms affecting the forum state." *Premier Prop. Sales Ltd. v. Gospel Ministries Int'l, Inc.*, 539 F. Supp. 3d 822, 828 (S.D. Ohio 2021). "[M]erely directing communications to an Ohio resident for the purpose of negotiating an agreement" is not enough, by itself, to constitute transacting business in Ohio. *Id.* (quotation omitted). Such communications must be paired with "some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Id.* (quotation omitted). Courts consider "prior negotiations, future consequences, and the terms of the contract." *The Andersons, Inc. v. Demrex Indus. Servs., Grp., LLC*, 590 F. Supp. 2d 963, 968 (N.D. Ohio 2008) (quotation omitted).

Though located in North Carolina, Surber communicated with Ohio residents through phone calls and emails about forming an Ohio-based entity. (Tipton Aff., Doc. 12-1, Pg ID 129.) From the first conference call onward, Surber knew that the venture would involve supplying personal protective equipment primarily through Tipton's preexisting operations in Middletown, Ohio. (*Id.*) Surber then signed a Letter of Understanding designating a 20% membership interest to Birdie Rae. (Letter of Understanding, Doc. 5, Pg. ID 73-75.) This indicates that Surber envisioned an ongoing Ohio business relationship with Ohio residents. *See CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir. 1996) (noting that "this was a relationship intended to be ongoing in nature"); *Ardent Techs. Inc. v. Advent Servs LLC*, No. 3:23-CV-137, 2023 WL 5588547, at *7 (S.D. Ohio Aug. 29, 2023) (observing that the "business relationship was intended to be

continuous, notwithstanding the length of time that the relationship actually persisted").

Moreover, Surber agreed with Plaintiffs that Provision-Med would operate from Ohio. (Tipton Aff., Doc. 12-1, Pg. ID 129-30.) He took steps in getting the Ohio-based Provision-Med off the ground by managing its Shopify app and online portal, as well as enlisting a family member to help with its website. (*Id.* at Pg. ID 130.) Provision-Med then made sales through Shopify or phone and shipped products from Middletown, Ohio. (*Id.*) Surber also agreed to provide capital contributions for the joint Ohio venture of Provision-Med. (Compl., Doc. 5, ¶¶ 4-6.) Thus, Surber "agreed on terms affecting the forum state" and transacted business within Ohio. *Premier Prop. Sales Ltd.*, 539 F. Supp. 3d at 828.

Moving Defendants point to the purported infrequency and brevity of Surber's communications with Plaintiffs. (Reply to Motion to Dismiss, Doc. 14, Pg. ID 170-71.) This argument is undermined by Tipton's declaration that "Surber was in frequent communication, including by phone, with all of us . . . in Ohio, for all these arrangements and the venture." (Tipton Aff., Doc. 12-1, Pg. ID 130.) *See Legacy Hemp LLC v. Terramax Holdings Corp.*, No. 5:20-CV-90, 2021 WL 5816817, at *4 (W.D. Ky. Dec. 7, 2021) (noting that defendant "frequently" communicated with its Kentucky producer). In any event, "[t]he issue is not the quantity, but the quality of a defendant's contacts with the forum state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 901 (6th Cir. 2017). As Surber was involved in the arrangements and agreements pertaining to Provision-Med described above, Moving Defendants' argument fails to show that this Court lacks personal jurisdiction over Surber.

Thus, Plaintiffs have shown "some continuing obligation that connects the nonresident defendant to the state or some terms of the agreement that affect the state." *Premier Prop.*, 539 F. Supp. 3d at 828 (quotation omitted). Ohio's long-arm statute confers jurisdiction because Surber transacted business in Ohio.

### C.     Due Process

Given that the Court may exercise personal jurisdiction over Surber under Ohio's long-arm statute, the question turns to due process considerations. "The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The nonresident "generally must have certain minimum contacts such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (cleaned up). Courts look to whether: (1) the defendant "purposefully avail[ed] himself of the privilege of acting in the forum state or causing a consequence in the forum state," (2) the claim arose from the defendant's contacts with the forum state, and (3) the defendant's actions or consequences of such actions had a "substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023) (quotations omitted). The Court considers each in turn.

### i.     Purposeful Availment

"The 'purposeful availment' requirement is satisfied when the defendant's contacts with the forum state proximately result from actions by the defendant *himself* that create a substantial connection with the forum State, and when the defendant's

conduct and connection with the forum are such that he should reasonably anticipate being haled into court there." *CompuServe, Inc.*, 89 F.3d at 1263 (quotations omitted). This ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous or attenuated contacts or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (cleaned up). A defendant need not have physical contacts with the forum state, however, as long as his efforts were purposefully directed towards the forum state. *Id*. at 476.

"Identical standards are used to interpret the 'transacting any business' standard of Ohio's Long–Arm Statute and the 'purposeful availment' prong of the constitutional standard." *Dayton Superior Corp. v. Yan*, 288 F.R.D. 151, 164 (S.D. Ohio 2012) (citing *Burnshire Dev., LLC v. Cliffs Reduced Iron Corp.*, 198 F. App'x 425, 432 (6th Cir. 2006)). Accordingly, the preceding analysis remains relevant.

Surber purposefully directed his actions to Ohio. As explained, Surber conversed about the prospect of a personal protective equipment venture with Ohio residents and then signed a Letter of Understanding designating his business a 20% membership interest in the Ohio-based entity. (Tipton Aff., Doc. 12-1, Pg. ID 129-30.) This venture materialized into Provision-Med, which conducted business in Ohio. (*See id.*) Surber assisted in its management and frequently communicated about Provision-Med with Plaintiffs. (*Id*. at Pg. ID 130.) Moving Defendants allegedly breached a contract by failing to provide capital contributions to this very same venture. (Compl., Doc. 5, ¶¶ 4-6.)

When it comes to interstate contractual obligations, "parties who reach out beyond one state and create continuing relationships and obligations with citizens of another

state are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King*, 471 U.S. at 473 (quotation omitted); *see also Ardent Techs. Inc.*, 2023 WL 5588547, at *7 (Defendants' knowledge that "they would be drawing from Ohio's well" supported finding of purposeful availment.). Here, Ohio was not merely implicated by the "unilateral activity" of a contracting plaintiff who just happened to reside in Ohio. *Herold v. Venetis*, 226 N.E.3d 1092, 1104 (Ohio Ct. App. Oct. 23, 2023). Rather, Surber reached into Ohio to transact business and purposefully availed himself of the privileges and consequences of doing business in Ohio.

**ii.   Arising Under**

The Court next considers whether the cause of action arises from Surber's contacts with Ohio. This is a "lenient standard" that does not require that the cause of action "formally" arise from defendant's contacts with the forum. *Air Prod. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir. 2007). Instead, this standard is "met when the operative facts are at least marginally related to the alleged contacts between the defendant and the forum." *Lyngaas v. Curaden Ag*, 992 F.3d 412, 423 (6th Cir. 2021) (quotation omitted).

In the breach of contract context, some cases suggest that the breach itself must have occurred in the forum state. *Baker v. Bensalz Prods., Inc.*, 480 F. Supp. 3d 792, 805 (S.D. Ohio 2020) (collecting cases). Moving Defendants cite *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 152 (6th Cir. 1997), to argue this point. (Defendants' Reply, Doc. 14, Pg. ID 172.) In *Kerry Steel*, the Sixth Circuit explained that a breach of contract claim arose from the defendant's failure to pay the full contract price in Oklahoma—where the refusal

12

to pay occurred. *Kerry Steel*, 106 F.3d at 152. However, the Sixth Circuit reached this conclusion after determining that the defendant had *not* purposefully availed himself to the forum state. *Id.* Accordingly, "the mere fact that the transaction involved a Michigan party [was] obviously not sufficient" to form a substantial connection with the defendant's in-state contacts. *Id.*

In contrast, "where a contract forms the basis of a continuing relationship with the forum state that is sufficient to show purposeful availment, courts have found a cause of action for breach of that contract arises from the defendant's contacts in the state." *JDGlobal, LLC v. Tech. Molding Mgmt. Sys., Inc.*, No. 22-10762, 2022 WL 17832908, at *4 (E.D. Mich. Dec. 21, 2022) (citing *Tharo Sys., Inc. v. Cab Produckttechnik*, 196 F. App'x 366, 371 (6th Cir. 2006); *Ohio Valley Bank Co. v. Metabank*, No. 2:19-CV-191, 2019 WL 4574528, at *9 (S.D. Ohio Sept. 20, 2019)).

The case at hand is distinguishable from *Kerry Steel*. Unlike the out-of-state defendant in *Kerry Steel*, Surber purposefully availed himself to suit in Ohio, and the contractual terms are connected to Ohio. *See, e.g.*, *Terramax Holdings Corp.*, 2021 WL 5816817, at *7 (distinguishing case from *Kerry Steel* because plaintiff alleged facts connecting the subject matter of the contract or its performance to forum state). As Plaintiffs' breach of contract claim involves allegedly unpaid contributions for a joint business venture in Ohio, Surber's contacts with Ohio relate to these operative facts. Thus, this action arises from Surber's contacts with Ohio.

### iii. Reasonableness

Finally, the Court considers whether "the acts of the defendant or consequences caused by the defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968). When the previous two conditions are met, as is the case here, it is "only the unusual case" in which the defendant presents a "compelling" reason that jurisdiction would be unreasonable. *Air Prod. & Controls*, 503 F.3d at 554 (quotation omitted); *Burger King*, 471 U.S. at 477. In making this determination, courts consider "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing the most efficient resolution of the policy." *Air Prod. & Controls*, 503 F.3d at 554-55.

Moving Defendants argue that exercising jurisdiction would be unreasonable because Surber did not purposefully avail himself to Ohio. (Reply, Doc. 14, Pg. ID 173.) For reasons already discussed, this argument is unpersuasive. And, the factors support the reasonableness of jurisdiction. Though Surber resides in North Carolina, this—in and of itself—does not create an unreasonable burden to preclude jurisdiction. *See Chulsky v. Golden Corral Corp.*, 583 F. Supp. 3d 1059, 1081 (S.D. Ohio 2022). Moreover, Ohio has an interest in adjudicating this dispute. This case not only involves Ohio residents but also an Ohio-formed entity doing business in the state. *See id*. Proceeding with litigation in this Court would also promote efficiency by avoiding piecemeal litigation. *See id*. Thus, exercising jurisdiction is reasonable.

For these reasons, Plaintiffs have made a prima facie showing that this Court has

personal jurisdiction over Surber.

### III.    Motion to Dismiss for Failure to State a Claim

The Court now turns to Moving Defendants' argument that Plaintiffs have failed to state a claim against them. (Motion to Dismiss, Doc. 4, Pg. ID 64-67.) The Federal Rules of Civil Procedure allow, upon motion, the dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581 (6th Cir. 2018). However, courts are not bound to do the same for a complaint's legal conclusions, *Twombly*, 550 U.S. at 555.

To prove a breach of contract under Ohio law, a plaintiff must establish four elements: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff." *Moncrief v. Bohn*, 9 N.E.3d 508, 514, (Ohio Ct. App. Mar. 6, 2014). A plaintiff "must allege, either directly or inferentially, facts supporting each material element." *Rachells v. Cingular Wireless*, 483 F. Supp. 2d 583, 590 (N.D. Ohio 2007) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988)).

Moving Defendants argue that Plaintiffs failed to sufficiently allege that either Defendant breached the Letter of Understanding, the Operating Agreement, or any oral Agreement. (*See* Motion to Dismiss, Doc. 4, Pg. ID 64-67.) While Plaintiffs have not alleged

a breach of the written agreements in isolation, their breach of contract claim survives under the alleged oral agreement.

Plaintiffs allege that they entered into an oral agreement in which each Defendant would provide capital contributions for the joint venture. (Compl., Doc. 5, ¶ 4.) Plaintiffs performed their obligations under this agreement, but each Defendant breached by failing to pay the specified amount due. (*Id*. at ¶¶ 5-6.) This breach resulted in $85,819.97 in damages as to each Defendant. (*Id*. at ¶ 6.) Though the Letter of Understanding and Operating Agreement do not mandate capital contributions and therefore cannot form the basis for the breach of contract claim, they provide context and plausibility for the alleged existence and breach of the provision in an oral contract. *See Rachells*, 483 F. Supp. 2d at 590 (plaintiff may allege facts inferentially supporting each element of a contract claim). Thus, the Complaint offers sufficient "explanation, including the relevant terms of the [oral] agreement, how the agreement was breached, and how that breach harmed the [Plaintiffs]." *Derbabian v. Bank of Am., N.A.*, 587 F. App'x 949, 954 (6th Cir. 2014).

Moving Defendants argue that the breach of contract claim cannot proceed under the oral agreement because Plaintiffs did not allege "when the oral contract was supposedly entered, who the parties were, or what the specific terms of the supposed agreement actually were." (Motion to Dismiss, Doc. 4, Pg. ID 67.) But, Plaintiffs provide sufficient allegations to show a breach of contract. (*See* Compl., Doc. 5, ¶¶ 4-6.) Specifically, Plaintiffs allege that each Defendant entered and then breached the oral agreement by failing to provide capital contributions for the joint venture. (*Id*. at ¶ 4.) Construing such allegations in favor of Plaintiffs, the Court finds that Plaintiffs have

16

alleged sufficient facts to support a plausible claim for breach of contract against each Moving Defendant. *See Collins v. Stable Bar, LLC*, No. 3:18-CV-191, 2018 WL 5777305, at *3 (S.D. Ohio Nov. 2, 2018) (finding that complaint alleged "a meeting of the minds as to the essential terms of the alleged oral agreement" despite defendant's objection that it did not include detailed terms).

Moving Defendants also argue that the claim cannot proceed against Surber because he did not personally sign the Letter of Understanding or Operating Agreement. (Motion to Dismiss, Doc. 4, Pg. ID 64-67.) But, as discussed above, Plaintiffs' breach of contract claim against Moving Defendants proceeds under the alleged oral agreement between the parties. The Complaint provides that each Defendant entered into the oral agreement to make capital contributions. (*See* Compl., Doc. 5, ¶ 4.) Thus, reading the Complaint in the light most favorable to the non-moving parties, Plaintiffs have sufficiently alleged a breach of an oral contract by Moving Defendants.

## IV. Motion to Amend

Lastly, the Court considers Plaintiffs' Motion to Amend their Complaint "to address any pleading deficiencies determined by the court." (Motion to Amend, Doc. 13, Pg. ID 163.) "Although [Federal Rule of Civil Procedure] 15 instructs courts to 'freely give leave' to amend, the Sixth Circuit has held that this liberal policy is not without constraints." *Grubbs v. Smith & Nephew, Inc.*, No. 1:19-CV-248, 2020 WL 5305542, at *6 (S.D. Ohio Sept. 4, 2020). Plaintiffs do not attach a proposed amended complaint, nor do Plaintiffs identify what amendments they intend to make to their original Complaint. (*See* Motion to Amend, Doc. 13.) Without this information, the Court cannot determine

17

whether amendment is appropriate. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014); *Grubbs*, 2020 WL 5305542, at *6. In turn, the Court denies the motion at this time.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS** the following:

1. Plaintiffs' Motion to Strike (Doc. 15) is **DENIED**;

2. Defendants' Motion to Dismiss (Doc. 4) is **DENIED**; and

3. Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 13) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND

18